UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STATE FARM FIRE & CASUALTY CO., as subrogee of Allen & Greenboatstuff Properties, LLC,<br><br>Plaintiff,<br><br>v.<br><br>HEWLETT-PACKARD COMPANY, a foreign corporation,<br><br>Defendant. | NO: 13-CV-0328-TOR<br><br>ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND TO PRECLUDE EXPERT TESTIMONY |

BEFORE THE COURT is Defendant's Motion for Summary Judgment and to Preclude the Testimony of Plaintiff's Expert Witnesses (ECF No. 27). The motion was heard with oral argument on September 28, 2015. James Jason Marquoit appeared on behalf of Plaintiff State Farm Fire & Casualty Co. ("State Farm"). Christopher G. Betke and William F. Etter appeared on behalf of Defendant Hewlett-Packard Company ("Hewlett-Packard").

///

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND TO PRECLUDE EXPERT TESTIMONY ~ 1

The Court has reviewed the motion and the file therein and heard from counsel. Being fully informed, Defendant's motion is denied.

## BACKGROUND

This is a subrogation action concerning a fire that occurred on November 22, 2011, in the Spokane commercial offices of Allen & Greenboatstuff Properties, LLC. The fire began and self-extinguished sometime overnight. No one was in the office when the fire occurred. The fire was discovered at about 7:00 a.m. Allen & Greenboatstuff Properties, LLC held a property and casualty insurance policy with State Farm. ECF No. 29 ("Defendant's Declaration in Support of Motion") Ex. 1 ("Plaintiff's Complaint") at ¶ 4. State Farm paid Allen & Greenboatstuff Properties $373,603.90 to cover property damage and incidental costs relating to the fire. *Id.* at ¶ 7.

On November 22, 2011, the same day as the fire, State Farm retained CASE Forensics to determine the origin and cause of the fire. ECF No. 37 ("Plaintiff's Declaration Against Motion") Ex. 3 ("FRCP 26 Disclosure Report") at 4. Michael Zambryski, a fire investigator from CASE Forensics, examined the scene and determined the origin of the fire was on the surface of a desk at the Hewlett-Packard LaserJet printer ("HP printer") and that the cause of the fire was the HP printer. ECF No. 37 Ex. 2 ("CASE Forensics Report") at 5. Likewise, on the same day, a fire investigator, Lieutenant Jason Reser, from the Spokane Fire Department

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND TO PRECLUDE EXPERT TESTIMONY ~ 2

Special Investigation Unit, examined the scene and determined "[t]he fire originated within an HP All-In-One LaserJet printer which was located on a desk." ECF No. 37 Ex. 1 ("Spokane Fire Dept. Report") at 5.

On November 29, 2011, Tiffany Erickson, a Claim Representative for State Farm, sent Hewlett-Packard a letter of notification stating Hewlett-Packard was responsible for a loss sustained by State Farm's insured. ECF No. 29 Ex. 11 ("Notification Letter"). The letter notified Hewlett-Packard of State Farm's intention to recover the loss from Hewlett-Packard. Hewlett-Packard states this seven-day delay in notification "deprived [Hewlett-Packard] of any opportunity to examine the scene before it was destroyed." ECF No. 28 ("Defendant's SOF") at ¶ 15.

On March 1, 2012, a joint examination of evidence was held at a CASE Forensics laboratory. ECF No. 37 Ex. 2 at 2. Evidence collected from the scene was examined by Tom Battisto, an electrical engineer from CASE Forensics, and by parties representing Hewlett-Packard. The evidence examined consisted of the desktop where the fire occurred and all electrical devices on and around the desktop, including the HP printer. *Id.* In a report dated September 10, 2012, Mr. Battisto shared his findings from the joint examination and the CASE Forensic investigation. *Id.* at 1-5. No similar report from Hewlett-Packard's representatives was submitted to the court. Mr. Battisto concluded the fire originated at the HP

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND TO PRECLUDE EXPERT TESTIMONY ~ 3

printer and the cause of the fire was the HP printer. *Id*. at 5. The report stated that the "source of ignition has not been determined," but "[t]he printer's power supply and fuser components have not been eliminated." *Id*. The report recommended future work to include extraction and examination of the printer fuser from subject and exemplar printers and evaluation of the "thermal cut-out" for the fuser. *Id.*

On August 21, 2013, State Farm filed a product liability claim against Hewlett-Packard in Spokane Superior Court. ECF No. 29 Ex. 1. On September 11, 2013, Hewlett-Packard filed a Notice of Removal (ECF No. 1) to this Court from Spokane County Superior Court, invoking diversity jurisdiction under 28 U.S.C. § 1332(a).

On February 9, 2015, experts from both parties undertook another joint examination of evidence and of an exemplar printer. ECF Nos. 29 Ex. 9 ("Expert Report of Donald Galler") at 2; 37 Ex. 3 at 6. State Farm's experts again concluded that the HP printer was the cause and origin of the fire. *See* ECF 37 Ex. 3. Hewlett-Packard's expert Donald Galler concluded the HP printer was not the cause of the fire. *See* ECF No. 29 Ex. 9 at 8. Instead, Mr. Galler concluded the most likely cause of the fire was "some type of drop-down associated with the lighting system failure which explains the circuit breaker tripping." *Id.*

On February 16, 2015, Paul Way and Michael Zambryski prepared a "Federal Rule 26 Disclosure Report" (ECF No. 37 Ex. 3). The report explained the

details of Mr. Zambryski's and Mr. Way's research and investigation, including the scientific principles and methodology employed. The report cites three reference guides: (1) *NFPA 921: Guide for Fire and Explosion Investigations* (2011) ("NFPA 921"), a publication issued by the National Fire Protection Association; (2) *Kirk's Fire Investigation: 7th ed.* (2011) ("Kirk's Fire Investigation"); and (3) *The Ignition Handbook: Principles and Applications to Fire Safety Engineering, Fire Investigation, Risk Management and Forensic Science* (2003) ("Ignition Handbook"). ECF No. 37 Ex. 3 at 6. The report details the exact tasks undertaken and methodology used by the two experts throughout the course of their investigation. *Id.* The report concludes that the HP printer is the origin and cause of the fire. The report provides two theories for an ignition source. First, the report cites a 2011 article from MSNBC suggesting that HP printers are susceptible to being "hacked" to start fires. *Id.* at 12. Second, the report states, due to the damage to the electrical components within the power supply of the HP printer, the experts could not rule out a fuse in the power supply as a potential ignition source. *Id.* at 11.

      Hewlett-Packard now moves to preclude the testimony of State Farm's expert witnesses. ECF No. 27. Hewlett-Packard also moves for Summary Judgment. *Id.* at 1. On August 24, 2015, State Farm submitted a timely response in opposition to Hewlett-Packard's motion. ECF No. 34.

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND TO PRECLUDE EXPERT TESTIMONY ~ 5

## DISCUSSION

Hewlett-Packard moves to preclude all expert opinions proffered by Michael Zambryski and Paul Way. ECF No. 27. Hewlett-Packard contends that without such expert opinions State Farm cannot sustain its burden of proof and summary judgment should be granted to Hewlett-Packard. *Id.* at 1-2. Each of these arguments is addressed in turn below.[1]

### I. Hewlett-Packard's Motion to Preclude the Expert Testimony of Michael Zambryski and Paul Way

Hewlett-Packard challenges the reliability of State Farm's experts. Hewlett-Packard argues that the experts' proffered opinions "demonstrate a pervasive lack of reliability such that they fail to satisfy the requirements of Fed. R. Evid. 702 and are inadmissible." *Id.* at 1.

---

[1] The Court acknowledges Hewlett-Packard's argument to have Plaintiff's Response brief (ECF No. 34) stricken in its entirety for failure to comply with Local Rule 10.1(a)(2), ECF No. 39 ("Defendant's Reply Memorandum") at 1-2, which requires documents submitted to the Court to appear in typeface of 14 points or more. The Court denies this request, *see* Fed. R. Civ. P. 83(a)(2), but requires future submissions and filings of both parties to comply with all Local Rules, including Local Rule 10.1, "General Format of Documents Presented for Filing."

a. **Legal Standard**

Although federal jurisdiction in this action is based on diversity of citizenship and Washington law governs the ultimate issue of liability, the Federal Rules of Evidence govern expert qualification and the admissibility of proposed expert testimony. Expert testimony is admissible if its meets the standards set for in Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 597 (1993), the Supreme Court directed trial courts to perform a "gatekeeping" function to ensure that expert testimony conforms to Rule 702's admissibility requirements. When determining the admissibility of expert testimony, the Court must engage in a two-party inquiry, examining the relevance and the reliability of the testimony sought to be introduced. *Daubert*, 509 U.S. at 597.

First, the Court must determine whether a reliable methodology was used by the expert witness. *Daubert*, 509 U.S. at 595 ("The focus, of course, must be

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND TO PRECLUDE EXPERT TESTIMONY ~ 7

solely on principles and methodology, not on the conclusions that they generate."). The reliability standard is "a flexible one." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). *Daubert* provides a non-exclusive list of factors a court could consider in determining the reliability of expert testimony, including (1) whether a theory or technique can be tested, (2) whether it has been subjected to peer review and publication, (3) whether there is a known or potential rate of error, and (4) whether the theory or technique is "generally accepted" in the scientific community." *Daubert*, 509 U.S. at 593-594. Whether these specific factors are "reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Estate of Henry Barbain*, 740 F.3d 457, 463 (9th Cir. 2014) (citing *Kumho Tire,* 526 U.S. at 153).

Second, having determined reliability, the Court must evaluate the relevancy of the testimony by determining whether the information presented "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. In other words, the Court must determine whether the expert's "reasoning or methodology can be properly applied to the facts in issue." *Daubert*, 509 U.S. at 593.

Once the testimony is determined relevant and reliable, the testimony is admissible. Thereafter, any alleged weakness in an expert's methodology or conclusion goes to the degree of credibility to be accorded to the evidence, not to

the question of its admissibility.  *See Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony.").

  b. **Analysis**

The Court notes that Hewlett-Packard has not challenged the testimony of State Farm's experts on the relevancy prong of the *Daubert* test.  Nevertheless, based on the written submissions of the parties and the arguments presented at the September 28, 2015 hearing, the Court finds the testimony of Mr. Zambryski and Mr. Way is relevant and may assist the trier of fact because it directly explains the cause of the fire.  Thus, the only issue before the Court regarding the admissibility of State Farm's experts' testimony is its reliability.

  **1. State Farm's Expert Michael Zambryski**

State Farm has proffered Mr. Zambryski as a fire cause and origin expert.  ECF 34 at 6-9.  Hewlett-Packard seeks to preclude Mr. Zambryski's expert testimony as unreliable on multiple grounds, some of which goes to its disagreement with his conclusions.

First, Hewlett-Packard seeks to preclude the testimony of Mr. Zambryski on the ground that his methodology deviated from NFPA 921 standards.  ECF No. 27 at 12-16.  According to Hewlett-Packard, Mr. Zambryski, in violation of NFPA

921, conducted only one witness interview; approached the investigation with preconceived notions as to the cause of the fire; and failed to consider alternative causes. *Id.* In support of its argument, Hewlett-Packard argues "courts often exclude expert testimony that fails to comport with NFPA 921 standards when an expert explicitly references the guide in reaching his conclusions." ECF No. 27 at 11 (citing *Russ v. Safeco Ins. Co. of Am.*, 2013 WL 1310501, at *24 (S.D. Miss. Mar. 26, 2013); *Affiliated FM Ins. Co. v. LTK Consulting Services, Inc.*, 2014 WL 1494023, at *4 (W.D. Wash. Apr. 16, 2014)).

However, the two cases cited by Hewlett-Packard go on to assert that NFPA 921 is not the only reliable way to investigate a fire. *See Affiliated FM Ins.,* 2014 WL 1494023 at *4 ("However, it is also true that an expert's reliance on a methodology other than NFPA 921 does not render his opinions per se unreliable) (quotations and citations omitted); *Russ,* 2013 WL 1310501, at *24 ("We have held that NFPA 921 qualifies as a reliable method endorsed by a professional organization, … but we have not held NFPA 921 is the *only* reliable way to investigate a fire.") (italics in original; citations omitted).

Here, the parties do agree NFPA 921 is a recognized and reliable method of determining the cause and origin of a fire. Numerous courts have found NFPA 921 as reliable. *See, e.g.*, *Fireman's Fund Ins. Co. v. Canon U.S.A., Inc.*, 394 F. 3d 1054, 1057-58 (8th Cir. 2005) ("[NFPA 921] qualifies as a reliable method

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND TO PRECLUDE EXPERT TESTIMONY ~ 10

endorsed by a professional organization.") (citing *Daubert*, 509 U.S. at 594). However, neither Mr. Way nor Mr. Zambryski claim to rely solely upon NFPA 921. While the two experts reference NFPA 921 in their joint report, (ECF No. 37 Ex. 3), they also reference two other investigative guides: Kirk's Fire Investigation and the Ignition Handbook. *Id.* at 4.

Moreover, as a case cited by Hewlett-Packard explains, any purported flaws in Mr. Zambryski's NFPA 921 methodology goes to the weight of his testimonial evidence, not to the question of its admissibility. *See Schlesinger v. United States*, 898 F.Supp.2d 489, 505 (E.D.N.Y. 2012) ("The decision not to follow the methodology set forth in NFPA 921, as well as other purported flaws in the Russo methodology- e.g., the failure to rule out other possible cases- goes to the weight of the evidence, not its admissibility.") (citing *Allstate Ins. Co. v. Gonyo,* 2009 WL 1212481, at *6 (N.D.N.Y. April 30, 2009)).

Second, Hewlett-Packard challenges Mr. Zambryski's decision to not retain certain pieces of evidence. Hewlett-Packard proposes that the fluorescent light assembly, the tripped circuit breaker and the conduit between fluorescent lights should have been retained as evidence. ECF No. 27 at 6. Hewlett-Packard faults Mr. Zambryski's investigation and disagrees with his decision to not retain this evidence. *Id.* However, Mr. Zambryski did not collect the fixture because he had ruled it out as a possible origin and cause of the fire. ECF No. 34 at 3. Similarly,

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND TO PRECLUDE EXPERT TESTIMONY ~ 11

Mr. Zambryski did not retain or trace the circuit breaker because he concluded it was not a cause of the fire and instead malfunctioned because it was directly over the heat column created by the burning printer. *Id.*

Hewlett-Packard's contention that Mr. Zambryski should have retained more evidence is not a ground to preclude Mr. Zambryski's expert testimony. Essentially, Hewlett-Packard is requesting the Court to agree with its fire cause and origin theories over the theory presented by Mr. Zambryski and State Farm. However, the Court must take care not "to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other." Advisory Committee Notes, 2000 Amendments, Fed. R. Evid. 702. In fact, the Court is not charged with weighing the correctness of an expert's testimony. *See Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("The test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology.") Instead, "vigorous cross-examination, presentation or contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

Mr. Zambryski's methodology in formulating his opinion as to the origin and cause of the fire qualifies as reliable. Mr. Zambryski reached his conclusion that the cause and origin of the fire was the HP printer based on his years of experience, his physical inspection of the site, witness statements, examination of

fire patterns on the scene and ruling out other items on the scene as possible fire causes and origins. *See* ECF Nos. 34 at 8-10; 37 Ex. 3 at 4. He also preserved evidence from the scene by wrapping up the desk and all items on the desk, allowing for further examination of the evidence. ECF 34 at 9.

Based on the standards set forth in *Daubert* and Federal Rules of Evidence 702, this Court finds that Mr. Zambryski's methodology is sufficiently reliable to proceed. Thus, Hewlett-Packard's motion to preclude Mr. Zambryski's testimony is denied.

### 2. State Farm's Expert Paul Way

State Farm has proffered Mr. Way as an electrical engineer and certified fire and explosions expert. ECF No. 34 at 9. Hewlett-Packard seeks to preclude Mr. Way's expert testimony as unreliable. Similar to its challenge against Mr. Zambryski, Hewlett-Packard asserts Mr. Way's methodology and investigation deviated from NFPA 921 standards. ECF No. 27 at 16-20.

First, Hewlett-Packard claims Mr. Way deviated from NFPA protocol by failing to understand the use and operation of the printer in question, failing to propose an ignition scenario, and failing to test hypotheses. ECF No. 27 at 16-20. State Farm responds that all of these allegations are untrue. ECF No. 34 at 12-20. Like Hewlett-Packard's challenge to Mr. Zambryski's testimony, such purported flaws in Mr. Way's methodology goes to the weight of the evidence, and not to its

admissibility.  *See Schlesinger*, 898 F.Supp.2d at 505.  Importantly, the Court's "role as gatekeeper is not intended to serve as a replacement for the adversary system."  Advisory Committee Notes to the 2000 Amendments to Fed. R. Evid. 702 (quoting *United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996)).  Moreover, Rule 702 is not intended to provide "an excuse for an automatic challenge to the testimony of every expert."  *Id.* (citing *Kumho Tire Co.*, 119 S.Ct. at 1176).  As stated, the appropriate means of attacking "shaky but admissible evidence" is through "[v]igorous cross-examination, presentation of contrary evidence and careful instruction on the burden of proof."  *Daubert*, 509 U.S. at 595.

Second, Hewlett-Packard faults Mr. Way for relying on Mr. Zambryski's investigative results in the course of his analysis.  ECF No. 27 at 17.  However, an expert can "appropriately rely on the opinions of others if other evidence supports his opinion and the record demonstrates that the expert conducted an independent evaluation of that evidence."  *Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534, 544 (C.D.Cal. 2012) (citation omitted).  The record demonstrates that Mr. Way conducted his own examination of the evidence.  *See* ECF Nos. 34 at 10; 37 Ex. 7 ("Deposition of Paul Way") at 49; 63-65.

Mr. Way's methodology was reliable.  He reached his conclusions by analyzing the scene investigation, reviewing the results of the first joint

examination; examining an exemplar product; observing the fire patterns present on the evidence; x-raying the evidence; conducting Fourier Transform Infrared Spectroscopy (FTIR) analysis on the evidence; and participating in a joint examination of an exemplar printer, the subject printer and scene evidence. *See* ECF Nos. 34 at 10; 37 Ex. 3 at 4.

Based on the foregoing analysis and legal authority, this Court finds that Mr. Way's expert testimony is reliable under the standards of *Daubert* and Rule 702, and denies Hewlett-Packard's motion to preclude Mr. Way's expert testimony.

**II.    Hewlett-Packard's Motion for Summary Judgment is Denied**

Summary judgment may be granted to a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Hewlett-Packard claims that, absent the testimony of Mr. Zambryski and Mr. Way, State Farm has no evidence to meet its burden of proof, and, consequently, the complaint must be dismissed as a matter of law. ECF No. 27 at 1-2. However, since the requirements under *Daubert* and Fed. R. Evid. 702 have been met, Mr. Zambryski's and Mr. Way's opinions are admissible and do create a genuine issue of material fact as to the cause and origin of the fire. Thus, this Court finds the motion for summary judgment must be denied.

//

**ACCORDINGLY, IT IS HEREBY ORDERED:**

Defendant's Motion for Summary Judgment and to Preclude the Testimony of Plaintiff's Expert Witnesses (ECF No. 27) is **DENIED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

**DATED** October 5, 2015.



THOMAS O. RICE
United States District Judge